MacIntyre, executor, *et al.* v. McLean, administrator.

Gilbert, J. 1. One assignment of error is as follows: "The court erred in holding that item three of the will vested in Miss Cynthia McLean the property therein described upon the death of the testator, but on the contrary, the evidence showing that Miss Cynthia McLean, the devisee, died before the execution of the will and before the legacy was assented to, said legacy lapsed, and the property described therein descended to the heirs and became a part of the undevised estate of

K. T. McLean, deceased." *Held*, that the legacy in item three of the will did not lapse. "A will takes effect instantly upon the death of the testator, however long the probate may be postponed." Civil Code (1910), § 3831. The legatee therein died subsequently to the death of the testator, but within twelve months thereafter. The word "executed" in the phrase "when the will is executed," as used in the Civil Code (1910), § 3906, providing that "if a legatee dies before the testator, or if dead when the will is executed," etc., is synonymous with the word "made" (signing, attestation, etc., as provided for in the Civil Code (1910), § 3846). It has no reference to the carrying out by the executor of the provisions of the will. Compare *Cheney* v. *Selman*, 71 *Ga.* 384; *Tolbert* v. *Burns*, 82 *Ga.* 213 (8 S. E. 79). There are no words in the will fixing a different time for the vesting of the legacy.

2. The second assignment of error is as follows: "The court erred in deciding that the mortgage indebtedness of K. T. McLean is subject to an equitable distribution in accordance with the terms of the decree, because the property devised by K. T. McLean was only his equity of redemption, and that having been sold and the purchaser having assumed the indebtedness, said mortgage indebtedness could not be classified as an indebtedness of K. T. McLean chargeable against his heirs." *Held*, that the court did not err as contended. The fact that after the death of Cynthia McLean the property devised to her was sold, the purchasers assuming the mortgage debt secured by the property, does not affect the legal status that existed at the time of vesting. Her interests vested on the death of the testator. The assumption of such debts by the purchaser did not relieve the executors of the testator from the obligation to pay the debts of the estate as provided for in the second item of the will.

(*a*) The decree of the court, to the effect that "the mortgage indebtedness of K. T. McLean is subject to an equitable distribution," properly construed, does not include the indebtedness not incurred by K. T. McLean, but which was existing as a lien on property, an interest in which he had inherited subject to such indebtedness.

3. The third assignment of error is as follows: "The court erred in the rulings contained in the following paragraph of his decree, to wit: 'It is therefore decreed that the executors sell the property devised in item four of the will, and that the proceeds arising from the sale of the property described in item three of the will be paid over to the executors by the defendant E. K. McLean, administrator, and that the debts of the said K. T. McLean be paid pro rata from the proceeds of the sale of said two devises, and from the devise in item three such sum that remains in hand after the deduction of the pro rata amount of expenses of administration, costs of court, and attorney's fees shall be paid over to the administrator; and that after the payment of debts of K. T. McLean pro rata, and the payment of expenses of administration, costs of court, and attorney's fees pro rata, from the proceeds of the property in item four of the will, one fourth of such sum as remains shall be held by the executors for the care and improvement of the family cemetery known as the Mitchell Cemetery, and the remaining three fourths of said sum shall revert to the estate of the said K. T. McLean for distribution among his heirs; the court holding that

the devise in item four was sentimental and made for the purpose and intention of preserving the old home of testator's wife, and the testamentary scheme has failed because of failure of the testator to make provision for his debts, and his intention is incapable of execution.' First, in holding that the property devised by item four of the will should be sold and the proceeds from the sale be used pro rata for the payment of the debts of K. T. McLean, because, the devise contained in item three of the will having lapsed by reason of the death of the devisee before the execution of the will, the residuary property not disposed of by special or general legacy, and the proceeds of that property, should be exhausted in the payment of debts before proceeding against the special legacy contained in item four of the will. Second, in holding that one fourth of the proceeds of the sale of the property described in item four of the will, after the payment of debts and the cost of administration, should be held by the executors for the care and improvement of the family cemetery known as the Mitchell Cemetery, and the remaining three fourths of said sum should revert to the estate of K. T. McLean for distribution among his heirs, because if said devise contained in item four of said will falls for the reason set forth in said decree, no part of said devise remains of force, and all of the proceeds of the sale of said property should go' into the estate undevised. Third, in holding that the devise in item four was sentimental and made for the purpose and intention of preserving the old home of the testator's wife, and the testamentary scheme had failed, because of the failure of the testator to make provision for his debts, and his intention is incapable of execution, because, even if the devise in item four was sentimental and made for the purpose and intention of preserving the old home of the testator's wife, said testamentary scheme has not failed, because the debts of the testator could be paid out of the proceeds of the personal property, the farm, the residence, and the store, all of which were attempted to be devised by item three of the will; and which item having lapsed because of the death of the devisee prior to the execution of the will and the assent of the executors to said legacy, said property and the proceeds thereof went back into the estate and were subject to the payment of the debts, and item four constituted a specific legacy and was not subject to the payment of the debts until after the general estate was exhausted, and there was ample money derived from the sale of other property to pay all the debts; and because, furthermore, if by the devise provided for in item three of the will the title to the property vested in Miss Cynthia E. McLean, the testamentary scheme could be carried out and the intention of the testator preserved by giving the legatees under item four of the will the opportunity to pay into court the pro rata part of the debts and preserve intact the property devised to them by item four of said will, or by directing that the property devised by item four of the will should be sold, in order that the money derived therefrom could be used in so far as necessary in the payment of its pro rata part of the debts and expenses of administration, and the residue, if any, to be paid over to the devisees under said item four, subject to the charge contained in item four of said will for the preservation and protection and care of the family cemetery." *Held,* that it was

error to hold that item four of the will lapsed because of the failure to·
provide for the payment of debts, and to order the property therein
described to be sold for the purpose of paying debts. All of the prop-
erties described in the will are subject to the payment of the debts of
the testator, and the legatees took in accordance with the will, subject
to such debts. The legatees should have been afforded the opportunity
to pay their pro rata share of the debts on an equitable basis, and to
receive their respective legacies free therefrom; or all of the property,
or a proportionate amount of the property upon a pro rata basis, should
be sold to pay the debts, the remainder to go to the legatees, as pro-
vided in the will.

4. The preceding headnotes deal with all of the assignments of error
made in the bill of exceptions.

*Judgment reversed. All the Justices concur.*

No. 5071. MAY 14, 1926.

Petition to construe will, etc. Before Judge Custer. Thomas
superior court. August 17, 1925.

K. T. McLean died testate on February 4, 1924. The provisions
of his will which are material follow: "Item III. I give and
bequeath to my only living sister, Cynthia E. McLean, my in-
terest in our home place facing on Remington Avenue, in Thomas-
ville, Ga., also my interest in the brick stores facing on Broad St.
and Jackson St. in Thomasville, Ga., also my interest in our farm
in the 14th Dist. of Thomas County, Ga., known as Maple
Springs, with all rights, members, and appurtenances to the said
lot of land in any wise belonging to me, free from all charge and
limitation whatever; to her own proper use, benefit, and behoof
forever, with full power to dispose of the same by will or other-
wise, as she may deem proper. I also give and bequeath to my said
sister in the same unreserved manner all of my household and
kitchen furniture of any sort whatsoever, also my horse and
buggy, and all of my personal property of every kind, including
all notes, accounts, and evidence of debts belonging to me. Item
IV. I give, bequeath, and devise to Miss Hattie Blackshear and
Miss Lizzie Blackshear and Mrs. Fannie Beach the old Mitchell
homestead in Grady County, Ga., in the Donalsonville Dist. known
as Fair Oaks, together with any household furniture and personal
property on said place at the time of my death. To have and to
hold during their natural life, and if either of them should die
her interest to go to the remaining two sisters, and at the death
of the next sister it shall go to the remaining one and she shall
have power to will it to some other member of the Blackshear

family, to the end that this old house should remain in the Mitchell and Blackshear families. Item V. I desire and direct that if at any time the place above bequeathed should be sold, then I desire that one fourth of the money derived from the sale shall be paid to my sister, Cynthia E. McLean, if living. If she is not living, then the one fourth of the money arising from the sale of the place shall be expended in the care and improvement of the family cemetery known as the Mitchell Cemetery on the place known as Fair Oaks."

A petition was filed by the executors of the will against E. K. McLean, as administrator of the estate of Cynthia E. McLean, who died on November 3, 1924, alleging that, excepting the property designated in the will of K. T. McLean as the Old Mitchell homestead known as Fair Oaks, E. K. McLean and Cynthia McLean each owned a one-half undivided interest in certain of the real estate and personal property, that E. K. McLean owned an undivided one-fourth interest in other property, and that Cynthia McLean owned the other three-fourths undivided interest; that there were several encumbrances against designated parcels of the real estate; that at the time of his death K. T. McLean was indebted to a number of creditors in designated amounts; that because K. T. and Miss Cynthia McLean lived together and owned the property as tenants in common, some of the debts mentioned were owed by K. T. McLean and Miss Cynthia McLean jointly; that E. K. McLean, as administrator upon the estate of Miss Cynthia McLean, had sold all of the personal property referred to in the will of K. T. McLean, except that in the residence at Fair Oaks, and had refused to pay to petitioners the portion of the proceeds belonging to the estate of K. T. McLean, and that he had obtained an order of the court of ordinary authorizing the sale, and had advertised for sale as the property of Miss Cynthia McLean all of the real estate referred to in the will of K. T. McLean, except the place known as Fair Oaks. The petition prayed that E. K. McLean, as administrator upon the estate of Miss Cynthia McLean, be restrained by injunction from proceeding further with the sale of real estate, and from paying out any part of the proceeds of the sale of personal property; that the court direct petitioners in the distribution of the estate of K. T. McLean and in the sale of such part of said estate as shall be

necessary for the payment of debts; that the court direct the sale of the entire interest of both K. T. McLean and Miss Cynthia Mc-Lean in all of the realty (except Fair Oaks), and that from the proceeds thereof and the proceeds of the personalty then held by E. K. McLean the debts of both K. T. McLean and Miss Cynthia McLean be paid; and for general relief. The matter was submitted to the court upon the following agreed statement of facts:

"It is agreed by and between the parties and their respective counsel that the several issues of law presented by the petition and cross-bill and intervention be decided and determined by the honorable superior court of Thomas County, now in session, at this the first term of the court, upon the following stipulation and agreement of facts, without the intervention of a jury. K. T. Mc-Lean of Thomas County, Georgia, died testate, on February 4, 1924, naming Hugh J. MacIntyre and Edward Lee Brown as his executors in his said will disposing of his property both real and personal, according to the several items therein, to his only sister Cynthia E. McLean and the intervenors named, who were his wife's nieces. His will was duly admitted to probate on the 3rd day of July, 1924, and his executors qualified as such on that date, and his estate has not been wound up nor distributed, nor his debts paid. His will was signed in due form on the 1st day of September, 1920. He was married to Miss Mitchell, who predeceased him. No children were born to him, and at the time of the making of said will and of his death his only next of kin and near relative was his sister Cynthia. The property devised to his wife's nieces, Miss Lizzie Blackshear, Miss Hattie Blackshear, and Mrs. Fannie Beach, was inherited by him from his deceased wife, this property being known and described in the will as 'Fair Oaks,' and was the family home of the Mitchell and Blackshear family. It is agreed that the family of the testator consisted of his father, who died prior to 1884; his mother, Mrs. Cynthia C. McLean, who died January 19, 1884, intestate, owning all of the properties in question, except 'Fair Oaks,' and the personal property mentioned in item four of his will, and with the possible exception of such of the personal effects as were acquired by the testator during his lifetime. by purchase; a sister Katherine, who died intestate in January, 1895, the wife of K. T. McLean, who died intestate in March, 1919; a sister, Miss Mary Emily McLean, who

died intestate January 6, 1920; a sister, Cynthia, who died November 3rd, 1924; and K. T. McLean who died February 4, 1924. It is agreed that K. T. McLean and his two sisters Mary and Cynthia survived all of the other members of the family and inherited all of the interest of the deceased members in the properties described in the will, with the exception of 'Fair Oaks' and the personal property mentioned in item four. It is agreed that K. T. McLean deeded his interest in the Glasgow farm mentioned in the will by the name of 'Maple Springs' to his two living sisters, Mary and Cynthia. And it is likewise agreed that upon the death of Mary, K. T. McLean her brother took by inheritance one half of her undivided interest in this farm and the personal property thereon, and upon his death owned a one-quarter interest therein. It is also agreed that K. T. McLean at the time of his death owned jointly with his sister Cynthia a one-half interest in the home place and the personal property thereon mentioned in the will in Thomasville, Georgia, and that he likewise owned a one-fourth interest in the storehouse and lot in Thomasville, Georgia, mentioned in the will. It is agreed that the Glasgow farm was encumbered by a mortgage signed by the two sisters, Mary and Cynthia, and that the home place in Thomasville, Georgia, was likewise encumbered by a mortgage signed by these two sisters and K. T. McLean jointly, and that these mortgages were outstanding and unpaid at the time of the death of K. T. McLean. It is also agreed that the storehouse and lot in Thomasville, Georgia, and the plantation known as 'Fair Oaks' and the household goods therein and the personal property were not encumbered. It is agreed that upon the death of Cynthia McLean on November 3, 1924, intestate, that E. K. McLean was appointed administrator upon her estate, to wit, on December 1, 1924, and took charge of all of the interests in the properties owned by her. That, by agreement which is hereto attached, said administrator sold the storehouse and lot for the sum of $25,000.00; that he sold the equity of K. T. McLean and his sister Cynthia in the Glasgow farm known as 'Maple Springs' for a sum of $1550.00; that he sold the equity of said parties in the home place in Thomasville, Georgia, for $3,035, and the personal property of K. T. McLean and Cynthia McLean, which consisted of the household furniture and the personal property on the farm known as 'Maple Springs'

for $2,268.39, the purchasers of the farm and the residence agreeing to assume the encumbrances thereon. It is agreed that he did not take possession of and that the executors of K. T. McLean refused to deliver to him the farm known as 'Fair Oaks' or any of the personal property or effects located thereon.

"It is agreed that both K. T. McLean and Cynthia E. McLean died owing debts which have not been paid, and that there are a number of relatives equally related to both K. T. McLean and Cynthia E. McLean, who are by law entitled to take all of their properties by inheritance, subject to the payment of debts, costs of administration, etc. It is agreed that the executors have not assented to any of the legacies provided in the will of K. T. McLean. It is agreed that the executors are contending that the administrator of Cynthia McLean has no right to the possession of 'Fair Oaks' or of the personal property thereon, and that they refuse to deliver the same to him to be sold for the payment of debts of K. T. McLean, and that they are likewise refusing to sell the same for this purpose, but are contending that the said property can not be sold for the payment of the debts of K. T. McLean. They are also contending that they are entitled to possession of all the property of K. T. McLean after the payment of debts and costs of administration, including executors' commissions, attorneys' fees, and court costs. We agree that the McLean family, consisting of the father, mother, and respective sisters and brother and the wife of said brother, all resided together as one family on the home place in the City of Thomasville and died there after living there together for a great number of years, and that both K. T. McLean and his sister Cynthia were residing there at the time of their deaths; that K. T. McLean had the active charge and control of all of the properties, and that he cultivated and managed the farm known as 'Maple Springs' and all of the other properties. It is agreed that the members of the family lived in amity with each other, and that a very deep love existed between K. T. McLean and his sister Cynthia. It is agreed that John W. H. Mitchell, of Thomasville, Georgia, will testify as follows: One month prior to the last sickness of K. T. McLean which resulted in his death, witness had a talk with him about 'Fair Oaks.' He stated to witness that it was his purpose to sell 'Fair Oaks,' as he needed the money. The witness John W. H.

Mitchell will further testify that after the death of K. T. McLean witness found among the private papers of deceased an envelope containing private papers marked on the outside, 'Papers of M. E. and C. E. McLean,' in the handwriting of the deceased. In this envelope was a statement in writing in the handwriting of the deceased, in which he stated that the money borrowed on the mortgage on the Glasgow place, known as 'Maple Springs,' was borrowed by his sisters for him and used by him; that he called the attention of the two executors H. J. MacIntyre and Edward Lee Brown to this paper, and left it with them among the private papers of K. T. McLean. Later on, Cynthia McLean on being told about this requested the witness to get this paper, and witness called the attention of the executors to her request but was unable to get the paper from them. It is also agreed that John W. H. Mitchell claims to be an heir of Miss Cynthia McLean. It is also agreed that certain witnesses will testify for the administrator that Fair Oaks is of the value of $6,000.00, and that certain witnesses for the executors will testify that the value of Fair Oaks is $2500.00. It is further agreed that E. L. Brown, executor, will testify that 'Fair Oaks' consists of about 125 acres of land 9 miles southwest of Thomasville; that the residence thereon is about seventy-five years old, and is in a very bad state of repair; that it would cost about ten thousand dollars to put the entire place in good repair, including the building of fences and outhouses; that the outhouses have about fallen down with old age; that the residence is not occupied, and that there are only about thirty acres of land on said place which are cleared and can be cultivated, and that these thirty acres are badly washed; that the land is of little intrinsic value. It is further agreed that K. T. McLean inherited another farm of about five hundred acres from his wife, which farm he sold during his lifetime. It is agreed that the testimony of John W. H. Mitchell in this agreement is placed herein subject to the objection by counsel for the plaintiff and the intervenors that the same is incompetent, irrelevant, and hearsay, and should not be considered by the court in determining the issues involved."

The court rendered the following judgment: "It being agreed that this cause shall be heard and determined at this term of the court by the judge upon an agreed statement of facts and with-

out the verdict of a jury; after argument had it is ordered, adjudged, and decreed: That the specific devise contained in item three of the will vested in the beneficiary upon the death of the testator, subject to the payment of debts. Tillson *v.* Holloway, 90 Neb. 481, 134 N. W. 232, Ann. Cas. 1913B, 78, and cases cited in note on page 81. That the words used in item three of the will, 'free from all charge and limitation whatever,' are construed and held to mean free from any testamentary charge or condition, and have no effect on the encumbrances that existed upon the property at the death of the testator. That the devise in item four of the will creates a base or qualified fee which shall become a fee-simple estate in the survivor of the three beneficiaries; but if the property is sold (after the payment of its pro rata share of the debts of the testator), a charge is created upon the fund arising therefrom for the maintenance of the Mitchell Cemetery to the amount of one fourth of the proceeds thereof, and this condition runs with the land should it pass to the devisees by the will. The ninth paragraph of the agreed statement of facts, with reference to the testimony of John W. H. Mitchell, is stricken under the objection reserved by counsel for the plaintiff and the intervenors. That the sale of the personal property produced a sum insufficient to pay the debts of K. T. McLean. That mortgage indebtedness of K. T. McLean has been disposed of by the assumption of said debts by the purchasers of the mortgaged property, but is subject to an equitable distribution in accordance with the terms of this decree. It is therefore decreed that the executors sell the property devised in item four of the will, and that the proceeds arising from the sale of the property described in item three of the will be paid over to the executors by the defendant, E. K. McLean, administrator, and the debts of said K. T. McLean be paid pro rata from the proceeds of the sale of said two devises, and from the devise in item three such sum that remains in hand after the deduction of the pro rata amount of expenses of administration, costs of court, and attorney's fees shall be paid over to the administrator; and that after the payment of debts of K. T. McLean pro rata, and the payment of expenses of administration, costs of court, and attorney's fees, pro rata, from the proceeds of the property in item four of the will, one fourth of such sum as remains

shall be held by the executors for the care and improvement of the family cemetery known as the Mitchell Cemetery, and the remaining three fourths of said sum shall revert to the estate of the said K. T. McLean for distribution among his heirs; the court holding that the devise in item four was sentimental and made for the purpose and intention of preserving the old home of testator's wife, and the testamentary scheme has failed because of failure of the testator to make provision for his debts, and his intention is incapable of execution. That the costs of court be equally divided between the plaintiff and the defendant, E. K. McLean, as administrator."

The plaintiffs assign error on said judgment as follows: "First: Because the court erred in holding that item three of the will vested in Miss Cynthia McLean the property therein described upon the death of the testator, but on the contrary, the evidence showing that Miss Cynthia McLean, the devisee, died before the execution of the will and before the legacy was assented to, said legacy lapsed and the property described therein descended to the heirs and became a part of the undevised estate of K. T. McLean, deceased. Second: That the court erred in deciding that the mortgage indebtedness of K. T. McLean is subject to an equitable distribution in accordance with the terms of the decree, because the property devised by K. T. McLean was only his equity of redemption; and that having been sold and the purchaser having assumed the indebtedness, said mortgage indebtedness could not be classified as an indebtedness of K. T. McLean chargeable against his heirs. Third: That the court erred in the rulings contained in the following paragraph of his decree, to wit: 'It is therefore decreed that the executors sell the property devised in item four of the will, and that the proceeds arising from the sale of the property described in item three of the will be paid over to the executors by the defendant, E. K. McLean, administrator, and the debts of said K. T. McLean be paid pro rata from the proceeds of the sale of said two devises, and from the devise in item three such sum that remains in hand after the deduction of the pro rata amount of expenses of administration, costs of court, and attorney's fees shall be paid over to the administrator; and that after the payment of debts of K. T. McLean pro rata, and the payment of expenses of administration, costs of court, and attor-

ney's fees pro rata, from the proceeds of the property in item four of the will, one fourth of such sum as remains shall be held by the executors for the care and improvement of the family cemetery known as the Mitchell Cemetery, and the remaining three fourths of said sum shall revert to the estate of the said K. T. McLean for distribution among his heirs; the court holding that the devise in item four was sentimental and made for the purpose and intention of preserving the old home of testator's wife, and the testamentary scheme has failed because of failure of the testator to make provision for his debts, and his intention is incapable of execution.' First, in holding that the property devised by item four of the will should be sold and the proceeds from the sale be used pro rata for the payment of the debts of K. T. McLean, because, the devise contained in item three of the will having lapsed by reason of the death of the devisee before the execution of the will, the residuary property not disposed of by special or general legacy, and the proceeds of that property, should be exhausted in the payment of debts before proceeding against the special legacy contained in item four of the will; second, in holding that one fourth of the proceeds of the sale of the property described in item four of the will, after the payment of debts and the cost of administration, should be held by the executors for the care and improvement of the family cemetery known as the Mitchell Cemetery, and the remaining three fourths of said sum should revert to the estate of K. T. McLean for distribution among his heirs, because if said devise contained in item four of said will falls for the reason set forth in said decree, no part of said devise remains of force, and all of the proceeds of the sale of said property should go into the estate undevised; third, in holding that the devise in item four was sentimental and made for the purpose and intention of preserving the old home of the testator's wife, and the testamentary scheme had failed, because of the failure of the testator to make provision for his debts, and his intention is incapable of execution, because, even if the devise in item four was sentimental and made for the purpose and intention of preserving the old home of the testator's wife, said testamentary scheme has not failed, because the debts of the testator could be paid out of the proceeds of the personal property, the farm, the residence, and the store, all of which were attempted to be devised by item three of the

will, and which item having lapsed because of the death of the devisee prior to the execution of the will and the assent of the executors to said legacy, said property and the proceeds thereof went back into the estate and were subject to the payment of the debts, and item four constituted a specific legacy and was not subject to the payment of the debts until after the general estate was exhausted, and there was ample money derived from the sale of other property to pay all the debts, and because, furthermore, if by the devise provided for in item three of the will the title to the property vested in Miss Cynthia E. McLean, the testamentary scheme could be carried out and the intention of the testator preserved by giving the legatees under item four of the will the opportunity to pay into court the pro rata part of the debts and preserve intact the property devised to them by item four of said will, or by directing that the property devised by item four of the will should be sold, in order that the money derived therefrom could be used in so far as necessary in the payment of its pro rata part of the debts and expenses of administration, and the residue, if any, to be paid over to the devisees under said item four, subject to the charge contained in item four of said will for the preservation and protection and care of the family cemetery."

*Branch & Snow,* for plaintiffs. *Titus & Dekle,* for defendant.